**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **FRONT ROW TECHNOLOGIES, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 6:23-cv-00035-AM** |
| **v.** | ) | |
| | ) | |
| **CISCO SYSTEMS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CISCO'S FED. R. CIV. P. 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS**
**FOR LACK OF PATENT ELIGIBILITY UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................................... 1

II.     SUMMARY OF ARGUMENTS ................................................................................ 1

III.    SUMMARY OF THE '784 PATENT AND PRIOR CASE HISTORY........................... 2

      A.     The '784 patent.................................................................................................. 2

      B.     Other Courts invalidated patents with parallel claims under 35 U.S.C. § 101............................................................................................................... 4

IV.    LEGAL STANDARD ................................................................................................. 7

      A.     Patent Eligibility Is Regularly Addressed at the Rule 12 stage.......................... 9

V.     ARGUMENT............................................................................................................. 9

      A.     Claim 1 of the '784 patent is patent-ineligible. .................................................. 9

           1.     Alice step one: Claim 1 of the '784 patent is directed to the abstract idea of authorizing access to content based on a user's location. ........................................................................................ 9

           2.     Alice step two: Claim 1 of the '784 patent lacks an inventive concept............................................................................................... 12

VI.    CONCLUSION........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016) ................................................................... 8

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) .........................................................................*passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ............................................................... 7-8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................ 7

*Berkheimer v. HP, Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ................................................................ 12

*Beteiro, LLC v. BetMGM, LLC*,
  No. 1:21-CV-20156, 2022 WL 4092946 (D.N.J. Sept. 7, 2022) ......................... 10

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018) ................................................................. 9

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020) ................................................................. 7

*CardioNet, LLC v. InfoBionic, Inc.*,
  No. 2020-2123, 2021 WL 5024388 (Fed. Cir. Oct. 29, 2021) ..................... 11, 13

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
  442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021) .................. 10

*Chamberlain Grp. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019) .......................................................... 10-11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................. 9

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ..................................................................... 7

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................ 8

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ................................................................ 12

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ................................................................ 9

*Front Row Techs., LLC v. NBA Media Ventures, LLC, et al.*,
  204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd*, 697 F. App'x 701 (Fed. Cir.
  2017), *cert. denied*, 138 S. Ct. 1597 (2018) .............................................. *passim*

*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) .................................................................... 7

*Intell. Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................ 1, 10, 13

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829 (E.D. Tex. 2014) ......................................................... 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) .............................................................................. 2, 12

*Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) ................................................................ 13

*Network Apparel Grp., LP v. Airwave Networks Inc.*,
  154 F. Supp. 3d 467 (W.D. Tex. 2015) ...................................................... 9

*Network Architecture Innovations LLC v. CC Network Inc.*,
  No. 2:16-CV-00914, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ................. 9

*NEXRF Corp. v. Playtika Ltd.*,
  547 F. Supp. 3d 977 (D. Nev. 2021), *aff'd*, No. 2021-2147, 2022 WL 1513310
  (Fed. Cir. May 13, 2022) ........................................................................ 10

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1166 (Fed. Cir. 2018) ................................................................ 8

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ................................................................. 9

*Smartflash LLC v. Apple Inc.*,
  680 F. App'x 977 (Fed. Cir. 2017) ............................................................ 13

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..........................................................................11, 13

*Trading Techs. Int'l, Inc. v. IBG LLC*,
  921 F.3d 1378 (Fed. Cir. 2019) ............................................................................. 8

*Walker v. Beaumont Indep. Sch. Dist.*,
  938 F.3d 724 (5th Cir. 2019) ................................................................................. 7

**Statutes**

35 U.S.C. § 101 ....................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ..............................................................................................1, 7, 9

## I.   INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Cisco Systems, Inc. ("Cisco") moves this Court to dismiss the Complaint of Plaintiff Front Row Technologies LLC ("Front Row") on the basis that the only asserted patent—U.S. Patent No. 8,750,784 ("the '784 patent")—is patent-ineligible under 35 U.S.C. § 101.   The asserted claims of the '784 patent are directed to the patent-ineligible abstract idea of authorizing access to content based on a user's location, and contain nothing more to move the claims beyond that abstract concept.   Tellingly, another Front Row Patent in the same family—U.S. Patent No. 8,583,027 ("the '027 patent")— with limitations that mirror the sole claim of the '784 patent charted in Front Row's complaint here, ***has already been found ineligible in prior litigation***. *Front Row Techs., LLC v. NBA Media Ventures, LLC, et al.*, 204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd* 697 F. App'x 701 (Fed. Cir. 2017).   The Federal Circuit Court of Appeals affirmed that ineligibility finding. *Id.* Put another way, Front Row's complaint is dead on arrival, because the '784 patent is ineligible for reasons already considered by a sister court and confirmed by the Federal Circuit.

## II.   SUMMARY OF ARGUMENTS

The claims of the '784 patent, like the '027 patent claims, are directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location."   *Front Row*, 204 F. Supp. 3d at 1280, *see also id.* at 1274 ("The 027 Patent is directed to the same abstract idea—restricting content based on a user's location.").   The Federal Circuit has made it clear that "tailoring content based on the viewer's location … is 'a fundamental … practice long prevalent in our system[.]'"  *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) (citing *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 219 (2014)). "Providing this minimal tailoring … based upon the location of the individual—is an abstract idea." *Id.*

Further, the claims of the '784 patent perform this abstract function using only conventional components and techniques, *e.g.,* a "computing device in the form of a wireless hand held device," a "wireless network," "wireless signal[s]," and "a triangulation method," '784 patent at 26:8-26, without any inventive concept. This is precisely the type of claim that Section 101 prohibits, and the claims should thus be held ineligible. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 84 (2012).

Nowhere in the Complaint does Front Row attempt to address the prior ineligibility decision or provide any allegation regarding patent eligibility. That is because it cannot.

## III.   SUMMARY OF THE '784 PATENT AND PRIOR CASE HISTORY

### A.   The '784 patent.

The '784 patent purports to disclose a method "for delivering venue-based data such as video" to a "remote" "computing device" "based on the … location of [the] user." '784 patent at 4:11-27. The '784 patent admits that "video-enabled cellular telephones" and "advanced data-and-video-enabled wireless communication devices" already existed that could "store and display information originating from various sources." *Id.* at 2:45-3:8. These devices received wireless data "through available data communications techniques." *Id.* at 2:59-67.

The '784 patent explains how this method works by coining the term "Venue Positioning System (VPS)." *Id.* at 22:39-41. "VPS devices" are simply generic devices used to triangulate. Indeed, the '784 patent describes that the VPS devices can operate "merely as transponders," and as nothing more than "data communication devices." *Id.* at 23:9-14; 23:46-49. "FIG. 19 illustrates in greater detail the VPS[.]" *Id.* at 23:36-37. "VPS devices [blue] 702, 704, 706, and 708 function in concert with one another to determine the location of hand held device 703 [pink]." *Id.* at 23:15-17.



FIG. 19

'784 patent, Fig. 19 (annotated).

The only description in the specification of utilizing "triangulation methods" is a single sentence that generically discloses that "[t]riangulation methods, for example, may be used through the hand held device or VPS devices to determine the location of the hand held device within the venue." *Id.* at 23:17-20. The '784 patent does not specify any particular "triangulation methods" or provide any details relating to utilizing "triangulation methods" to determine location.

As reflected in the bolded limitations below, claim 1 of the '784 patent focuses on nothing more than the concept of authorizing access to content based on a user's location."

> 1. A method **for authorizing access by at least one user of at least one service** associated with a venue and provided via a wireless network **based on a determined location of at least one computing device** in the form of a wireless hand held device used by said at least one user, said method comprising:
>
> **determining,** via a wireless signal obtained from at least one VPS device associated with a venue positioning system deployed within a venue, **a location of at least one user** based on location information obtained from said at least one VPS device about the location within the venue of said at least one computing device utilized by said at least one user wherein the at least one VPS device uses a

triangulation method to determine the location of the wireless hand held device within the venue; and

**allowing said at least one computing device to receive said at least one service from a server over a wireless network based on said location information** provided from said at least one VPS device for said at least one computing device.

'784 patent, claim 1 (emphasis added).

    **B.**    **Other Courts invalidated patents with parallel claims under 35 U.S.C. § 101.**

The Federal Circuit affirmed the District of New Mexico's holding that a variety of Front Row patents are invalid under 35 U.S.C. § 101. *Front Row Techs.*, 204 F. Supp at 1268-1281. Several of the invalidated patents are in the same patent family as the '784 patent, as shown in the figure below. Notably, the '027 patent has nearly identical patent claims to those of the '784 patent and a nearly identical specification[1] as it relies on the same chain of priority.

---

[1] Indeed, both the '027 and '784 patents purport to be direct continuations of the same application—U.S. Patent Application No. 13/314,385 which issued as U.S. Patent No. 8,270,895.



The Federal Circuit affirmed that Claim 1 of the '027 patent was directed to the patent-ineligible abstract idea of "authorizing handheld devices to receive streaming video based on a user's location," *i.e.,* "restricting content based on a user's location." *Front Row Techs.*, 204 F. Supp. 3d at 1274, 1280. The table below shows ineligible claim 1 of the '027 patent and claim 1 of the '784 patent, with parallel limitations highlighted in the same color:

| **'784 Patent, Claim 1** | **Ineligible, '027 Patent, Claim 1** |
|---|---|
| 1. *A method for authorizing access by at least one user of at least one service associated with a venue* and provided via a wireless network *based on a determined location of* at least one computing device in the form of a wireless hand held device used by said *at least one user*, said method comprising: | 1. *A method for authorizing access by a user of at least one service associated with an event at a venue based on a location of said user* as determined by information derived from communication between a computing device in the form of a wireless handheld device carried and utilized by said user and assets of a data communications network, said method comprising: |
| *determining*, via a wireless signal obtained from at least one VPS device associated with a venue positioning system deployed within a venue, *a location of at least one user based on location information* obtained from said at least one VPS device about the location within the venue *of said at least one computing device utilized by said at least one user* wherein the at least one VPS device uses a triangulation method to determine the location of the wireless hand held device within the venue; and | *determining a location of at least one user based on communications of at least one computing device* comprised of a wireless handheld device utilized by said at least one user with said data communications network supporting data communications of said at least one computing device; |
| *allowing said at least one computing device to receive said at least one service from a server over a wireless network based on said location information* provided from said at least one VPS device *for said at least one computing device.* | *authorizing said at least one computing device to receive said at least one service based on said location* as determined by said data communications network, wherein said at least one service includes streaming video accessed from a server wherein streaming video captured by at least one video camera operating within at least one entertainment venue is processed for delivery to subscribers of the at least one service and wherein said authorizing said at least one computing device further comprising preventing said at least one computing device from receiving said at least one service beyond or within a particular geographic area based on said location determination by said data communication network. |

6

## IV.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standards as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  Complaints that fail to state a claim upon which relief can be granted are to be dismissed as a matter of law.  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a court takes as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

The Supreme Court has explained that "[w]e have long held that … [l]aws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice*, 573 U.S. at 216.  In *Alice*, the Supreme Court set forth a two-step test for determining whether a claim is directed to such ineligible subject matter.

***Alice* step one.**  The first step is to "determine whether the claims at issue are directed to one of those patent-ineligible concepts," *e.g.,* an abstract idea.  *Id.* at 217.  "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence" and "does not require an evaluation of the prior art or facts outside of the intrinsic record."  *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020).

The step one analysis typically begins "with an examination of eligible and ineligible claims of a similar nature from past cases."  *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d

1288, 1295 (Fed. Cir. 2016). "Under this inquiry, [courts] evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG, LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (quotation omitted).

Where a claim recites "a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem," the "functional nature of the claim confirms that it is directed to an abstract idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

***Alice* step two.** If a claim is directed to ineligible subject matter, the second step is to "determine whether [any] additional elements transform the nature of the claim into a patent-eligible application" by reciting "an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (quotations omitted). Even if "the techniques claimed are groundbreaking, innovative, or even brilliant, [….] that is not enough for eligibility" if "the advance lies entirely in the realm of abstract ideas." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1166, 1163 (Fed. Cir. 2018). "What is needed is an inventive concept in the non-abstract application realm." *Id.* at 1168.

To the extent claims include non-abstract elements, they are still ineligible if they recite "well-understood, routine, conventional activities previously known to the industry." *Alice*, 573 U.S. at 225 (quotation omitted). The "inquiry is not whether the claimed invention as a whole is unconventional or non-routine," but "whether the claim limitations other than the invention's use

of the ineligible concept to which it was directed were well-understood, routine and conventional." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

### A.   *Patent Eligibility Is Regularly Addressed at the Rule 12 stage.*

The two-step *Alice* inquiry is a legal one, which may be decided based on the "intrinsic evidence from the specification without need for 'extraneous fact finding outside the record.'" *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017). Accordingly, courts have regularly addressed patent eligibility at the Rule 12 stage. *Network Apparel Grp., LP v. Airwave Networks Inc.*, 154 F. Supp. 3d 467, 473 (W.D. Tex. 2015) (dismissing case for lack of patent eligibility on a Rule 12 motion); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 847 (E.D. Tex. 2014); *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914, 2017 WL 1398276, at *7 (E.D. Tex. Apr. 18, 2017); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).

## V.   ARGUMENT

Although Front Row's Complaint provides a conclusory allegation that Cisco infringes "one or more of claims 1–20 of the '784 patent," Front Row only charted claim 1 of the '784 patent in support of its infringement allegations. *See* Dkt. 1-2. Thus, Cisco treats claim 1 as representative for the purposes of addressing the ineligibility of claims 1–20.[2]

### A.   *Claim 1 of the '784 patent is patent-ineligible.*

#### 1.   *Alice step one: Claim 1 of the '784 patent is directed to the abstract idea of authorizing access to content based on a user's location.*

---

[2] Further, when all the claims of the asserted patent are "substantially similar and linked to the same abstract idea," as they are here, this is the appropriate methodology. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

Claim 1 of the '784 patent is directed to the abstract idea of authorizing access to content based on a user's location.  The claim performs this abstract idea by reciting two limitations that require: (i) "determining … a location of at least one user" and (ii) "allowing … [a] computing device to receive … at least one service … based on said location information[.]"  '784 patent, claim 1.  This simple concept of acting upon the location of a user is abstract.  *See, e.g.*, *Intell. Ventures*, 792 F.3d at 1369; *Beteiro, LLC v. BetMGM, LLC*, No. 1:21-CV-20156, 2022 WL 4092946, at *7 (D.N.J. Sept. 7, 2022) ("All of these cases and others—within and outside the gaming context—confirm that "the concept of taking action in response to location-based information ... is abstract and patent-ineligible."); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021) (finding claims ineligible directed to the "basic steps of determining the configuration of a game based on the location of a mobile device," which was "a method of organizing human activity."); *NEXRF Corp. v. Playtika Ltd.*, 547 F. Supp. 3d 977, 991 (D. Nev. 2021), *aff'd*, No. 2021-2147, 2022 WL 1513310 (Fed. Cir. May 13, 2022) ("Claim 1 of the '116 patent is likewise directed to an abstract idea: incentivizing gambling tailored to a user's location.")

The remaining details recited in claim 1 add nothing to the abstract idea of authorizing access to content based on a user's location.  For example, the determining step of claim 1 requires (1) that "a wireless signal" is obtained from a VPS device associated with a venue positioning system "deployed within a venue," (2) that a user's location is determined "based on location information" obtained from the VPS device "about the location within the venue" of a user's computing device, and (3) that the VPS device uses a triangulation method to determine the location.  That the user's location is determined through a "wireless signal" obtained from a VPS device associated with a venue positioning system "deployed within a venue" merely limits the

invention to a specific field of use and does not render the claims any less abstract. *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) ("CGI alleges that its claims are not directed to an abstract idea, but instead to a novel combination of its prior art movable barrier operator with a transmitter that is wireless . . . But '[t]he Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.'") (internal citations omitted). Nor does the use of a functionally claimed VPS device or of a "triangulation method" to determine the user's location transform the abstract nature of the claim. The specification's purely generic and functional description of the VPS device, which operates "merely as transponder[]," and a "data communication device[]" '784 patent, 23:9-14; 23:46-49, and its lack of description of "triangulation methods," *id.* at 23:17-20, demonstrates that the "VPS device" and the "triangulation method" are "merely [] conduit[s] for the abstract idea" of authorizing access to content based on a user's location. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) ("The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms … the telephone unit itself is merely a conduit for the abstract idea of classifying an image and storing the image based on its classification."). And the claimed use of a "triangulation method" to determine the user's location is itself an abstract idea, a mathematical calculation, that does not transform the abstract nature of the claim. *CardioNet, LLC v. InfoBionic, Inc.*, No. 2020-2123, 2021 WL 5024388, at *4 (Fed. Cir. Oct. 29, 2021) ("But, at bottom, filtering the data requires only basic mathematical calculations … and such calculations, even if '[g]roundbreaking,' are still directed to an abstract idea.") (internal citations omitted).

Unsurprisingly, the Federal Circuit has already affirmed that this concept is abstract with respect to Front Row's '027 patent, which has a nearly identical specification and claimed subject matter. *See* Section III(B). The '027 claims were found to have also been directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location," *i.e.*, "restricting content based on a user's location." *Front Row*, 204 F. Supp. 3d at 1274, 1280. Further, the Court found that "Front Row's claims do not amount to 'improvements to computer-related technology.'" *Id.* at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). "Front Row did not invent streaming video, digital video, a new wireless protocol, or even an improvement to any component … Its claims do not improve the functioning of any of their generic physical components, such as PDAs or cellular telephones. They do not create any 'nonabstract' software improvements, such as faster processing times or flexibility." *Id.* "Unlike the claims in *Enfish*, the 'plain focus' of Front Row's claims is on '… tasks for which a computer is used in its ordinary capacity,' rather than on an "improvement to computer functionality itself." *Id.* (citing *Enfish*, 822 F.3d at 1336).

Given the parallels between the ineligible '027 claims and the '784 claims, this Court should find that the '784 patent claims fail at *Alice* step one just as the district court and Federal Circuit did in the prior litigation.

### 2. *Alice step two: Claim 1 of the '784 patent lacks an inventive concept.*

Because claim 1 of the '784 patent is directed to the abstract idea of authorizing access to content based on a user's location, that claim is ineligible unless it adds an "inventive concept" that ensures the patent amounts to significantly more than a patent on the ineligible idea itself. *Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The claim must do more than implement the abstract idea using "well-understood, routine, conventional activity" previously known in the industry. *Mayo*, 566 U.S. at 79. Nothing in claim 1 adds an inventive concept.

Claim 1 of the '784 patent recites generic components, such as a "computing device in the form of a wireless hand held device," a "wireless network," "wireless signal[s]," and "a triangulation method." '784 patent at 26:8-26. These are simply generic computer terms and methods that were well-known that do not confer an inventive concept. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. *See also id.* at 226 ("Nearly every computer will include a 'communications controller' and a 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required"); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (generic computer components such as an "interface," "network," and "database" fail to satisfy the inventive-concept requirement); *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017) ("As such, merely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not 'transform the nature of the claim' into a patent-eligible application."); *Intell. Ventures*, 792 F.3d at 1368 ("a database, user profile …[,] and a communication medium, are all generic computer elements"). Front Row's claims use these generic components in conventional ways, and do not solve a problem unique to the Internet. *See Intell. Ventures*, 792 F.3d at 1371. And again, the VPS device is described in purely generic and functional terms, and therefore does not confer patent eligibility. *In re TLI Commc'ns*, 823 F.3d at 614–615 (finding claims did not survive *Alice* step two where "abstract functional descriptions [were] devoid of technical explanation as to how to implement the invention"). Likewise, the utter lack of description of "triangulation methods" in the specification confirms its routine and generic nature which cannot provide the inventive concept. *Id.* And the claimed use of a "triangulation method" to determine a user's location is itself an abstract idea that further confirms it cannot provide the inventive concept. *CardoNet*,

2021 WL 5024388, at *5 ("[E]ven accepting CardioNet's argument that the T wave filter's function was innovative, '[a] claim for a new abstract idea,' here, a mathematical calculation, 'is still an abstract idea.'") (internal citations omitted).

Further, the Federal Circuit also already affirmed that the analogous claim 1 of the '027 patent lacked an inventive concept. *Front Row*, 204 F. Supp. 3d at 1280. Similarly, this Court should treat the claims of the '784 patent no differently than the District Court of New Mexico did (as affirmed by the Federal Circuit).

## VI.    CONCLUSION

Because the claims of the asserted patent, the '784 patent, are directed to an abstract idea that contains no inventive concepts, Cisco respectfully requests this Court to dismiss the Complaint for failure to state a claim upon which relief can be granted, finding that the '784 patent is patent-ineligible under 35 U.S.C. § 101.

Dated: February 7, 2023                    WINSTON & STRAWN LLP


                                           By:   /s/ Barry Shelton
                                                 Barry K. Shelton
                                                 TX State Bar No. 24055029
                                                 BShelton@winston.com
                                                 WINSTON & STRAWN LLP
                                                 2121 N. Pearl Street, Suite 900
                                                 Dallas, TX 75201
                                                 Telephone: (214) 453-6500
                                                 Facsimile: (214) 453-6400

                                                 K. Padmanabhan (*pro hac vice pending*)
                                                 kpadmanabhan@winston.com
                                                 Chris Gresalfi (*pro hac vice pending*)
                                                 cgresfali@winston.com
                                                 WINSTON & STRAWN LLP
                                                 200 Park Ave.

New York City, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Ryan Bradley (*pro hac vice pending*)
RDBradley@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

**ATTORNEYS FOR CISCO SYSTEMS INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 7, 2023, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will provide notice of the same to all counsel of record.

*/s/ Christopher Gresalfi*
Christopher Gresalfi
